UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOBY DOUGLAS,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA OFFICE OF ADMINISTRATIVE HEARINGS, et al.,<br><br>    Defendants. | Case No. 13-cv-05306-RMW<br><br>**ORDER ON MOTION FOR WRIT OF ORDINARY AND ADMINISTRATIVE MANDAMUS AND DECLARATORY RELIEF; MOTION TO DISMISS; MOTION TO STAY PUT**<br><br>Re: Dkt. Nos. 23, 24, and 34 |

Petitioner Toby Douglas, in his official capacity as Director of the California Department of Health Care Services, filed a petition for writ of administrative and ordinary mandamus and declaratory relief seeking, among other relief, an order compelling the respondent, the Director of the California Office of Administrative Hearings, to set aside the order and decision issued by one of its administrative law judges in the matter of *Parents on Behalf of Student v. California Children's Services*, OAH Case No. 2012080386. The Cupertino Union School District and Santa Clara County Office of Education joined in the opposition to petitioner's writ request. For the reasons explained below, the court grants the petition for writ for ordinary and administrative mandamus, denies petitioner's request for declaratory relief, grants petitioner's related motion to dismiss the counterclaims of respondent Parents (Real Parties in Interest) seeking enforcement of the Administrative Law Judge's award, denies payment of the parents' attorney's fees and denies

ORDER ON MOTION FOR WRIT
Case No. 13-cv-05306-RMW

Parents' motion for a "stay put" of the Administrative Law Judge's order during the pendency of the current litigation.

## I. BACKGROUND

### A. Brief Background on California's Implementation of the Individuals with Disabilities Education Act ("IDEA")

In an effort to provide students with disabilities with a free public education, the IDEA provides funding to local education agencies. 20 U.S.C. § 1400 *et seq*. IDEA requires that, in exchange for receipt of federal funding, school districts provide children with disabilities a "free appropriate public education," or "FAPE." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 520 (2007).

The provision of a FAPE begins with the development of an individualized education plan, or "IEP." 20 U.S.C. §§ 1412(a)(4), 1414(d). An IEP team, consisting of representatives from various agencies and the Parents of the disabled child, determines what services are required for the student to meet his educational needs. The IEP includes educational instruction "specially designed . . . to meet the unique needs of a child with a disability," § 1401(29), coupled with any additional " 'related services' " that are "required to assist a child with a disability to benefit from [that instruction]," § 1401(26)(A). *See also* § 1401(9).

If the parents are dissatisfied with the level of services provided in the IEP, they may initiate a due process hearing. 20 U.S.C. § 1415(f)(1)A). In California, a due process hearing is an administrative proceeding at the Office of Administrative Hearings. *See* Cal. Educ. Code § 56504.5, Cal. Gov't Code § 27727. The outcome of a due process hearing can be challenged in federal court. 20 U.S.C. § 1415(i)(2)A). This case arises out of the Health Department's challenge to the outcome of a due process hearing.

### B. Factual Background

Student J.C. ("J.C.") is a severely disabled 12-year-old boy who receives special education and related services from his local educational agencies ("LEAs"), the Cupertino Union School District and Santa Clara County of Education. J.C. also receives physical ("PT") and occupational

therapy ("OT") through California Children's Services ("CCS")[1] at a level determined by CCS to be "medically necessary" to meet his physical needs. Relevant here, for the school years 2011-2012 and 2012-2013, J.C.'s individualized education plan ("IEP") provided for Special Education and Related Services to include OT provided by his school one time each week for 45 minutes and OT provided by CCS one time each month for 45 minutes. Dkt. No. 35, Administrative Record ("AR") at 1238. The CCS physician determined that continuing weekly PT and monthly OT through CCS was the level of services medically necessary to treat J.C.'s CCS-eligible medical condition. *Id.*

Parents did not challenge the CCS determination by exercising their right to appeal and obtain an expert medical opinion at CCS's expense. *See* 22 Cal. Code Regs. § 42140; *see also* Cal. Health & Safety Code § 123929(a)(3). However, because Parents believed that J.C. should receive a higher level of OT to meet his medical and educational needs, Parents, on behalf of student J.C., filed a Special Education Due Process Complaint against the Department and the two LEAs responsible for ensuring that J.C. receives a free adequate public education.

After initiating the due process hearing, Parents settled with the LEAs and agreed, pursuant to the settlement, to pursue additional therapy against CCS only. The pertinent portion of the settlement agreement reads: "[i]n regard to OT . . . services for Student, Parents agree to the current level of OT at one 45 minute individual session per week . . . . Parents will pursue any OT . . . services from CCS . . . ." AR 384. Parents then amended their Special Education Due Process Complaint and proceeded only against the Department on their claim that more therapy was "medically necessary" than CCS had determined. AR 287-297.

After a hearing, the ALJ issued a decision, which as relevant here, found: (1) that "CCS failed to offer adequate OT service to meet [J.C.'s] unique needs" during school years 2011-2012 and 2012-2013; and (2) that instead of "us[ing] its own regulations," CCS should have complied with the educational code requirements for independent assessments. AR 1550-1551.

---

[1] The court refers to CCS and the California Department of Health Care Services ("Department") interchangeably.

ORDER ON MOTION FOR WRIT
Case No. 13-cv-05306-RMW                3

1    The ALJ ordered the Department to provide additional OT, once per week for 45 minutes,
2 and, as "compensatory education," required CCS to provide J.C. with an additional weekly session
3 of OT for 45 minutes for 26 weeks, and three additional OT sessions. AR 1554-55.  In addition,
4 the ALJ ordered the Department to reimburse Parents for the private assessments Parents obtained
5 from non-CCS approved providers because, according to the ALJ, the Department had failed to
6 comply with California Government Code § 7572(c), for submission of independent assessments
7 to the IEP team. *Id*.

### C. Procedural Background

Because the Department disputed the ALJ's findings, and questioned whether the ALJ had authority to make them, the Department filed a petition with the Superior Court of Santa Clara County asserting that the ALJ "exceeded its jurisdiction, committed prejudicial abuse of discretion, and failed to proceed in a manner required by law." Dkt. No. 4 at 8.  The petition seeks a writ of administrative and ordinary mandamus and declaratory relief.  Parents removed the case to this court, Dkt. No. 1, and the court denied the Department's Motion to Remand, Dkt. No. 22. Parents then filed a Motion to Stay Put, Dkt. No. 23, which seeks a court order requiring CCS to provide J.C. with the weekly OT sessions and compensatory services ordered by the ALJ for the duration of litigation.  The Department filed a Motion to Dismiss Counterclaims, Dkt. No. 24, seeking to dismiss Parents' counterclaims against the Department.  Following a hearing on the motion to stay put and motion to dismiss, the court took those matters under submission and the parties filed briefs relating to the merits of the petition.  The court heard oral argument on the merits of the petition on October 3, 2014.

## II. ANALYSIS

### A. Standard of Review

A writ of administrative mandate under California Code of Civil Procedure § 1094.5 is a process that looks into "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner

required by law . . ." Cal. Civ. Proc. Code § 1094.5(b). The court reviews legal questions, including statutory interpretation and jurisdiction de novo. *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 800-801 (1994).

A writ of ordinary mandamus can be used to force a particular action by an agency when the law clearly establishes the petitioner's right to such action. *Miller Family Home, Inc. v. Department of Social Services*, 57 Cal. App 4th 488, 491 (1997).

Here, the factual conclusions of the ALJ are not seriously challenged.[2] The Department does challenge the ALJ's jurisdiction and authority to arrive at his decision. The court reviews the ALJ's interpretation and application of the law *de novo*.

### B. The ALJ Did Not Err in Allowing the Parents to Proceed Against the Department in the Due Process Hearing But Did Exceed His Authority in Reviewing CCS's Medical Necessity Determination

The analysis of the ALJ's jurisdiction begins with three undisputed facts: (1) the IDEA, as implemented in California, provides for due process hearings before an ALJ to resolve issues relating to a student's IEP; (2) LEAs are responsible for providing "educationally necessary" services to a student, and (3) CCS is only responsible for providing "medically necessary" services to a student.

The Department determined that J.C. required OT one time each month for 45 minutes through the CCS program for his medical needs. His IEP also included as educationally necessary additional OT one a time each month for 45 minutes provided by the LEAs. The Parents, however, asserted that J.C. required more OT. The essential question in the current dispute is whether the ALJ could review the Department's medical necessity determination in a due process hearing.

#### 1. The OAH ALJ Cannot Review CCS's Medical Necessity Determination

California offers health services for children with exceptional needs through the Robert W.

---

[2] The Department makes one argument as to the ALJ's determination of the level of OT medically necessary in a footnote in the reply brief. *See* Dkt. No. 40 at 7 n.2. Because this argument was not raised in the opening brief, and was only raised in a footnote, it is waived. *See Sealant Sys. Intl., Inc. v. TEK Global S.R.L.*, 5:11-CV-00774-PSG, 2014 WL 1008183, at *14 (N.D. Cal. March 7, 2014).

ORDER ON MOTION FOR WRIT
Case No. 13-cv-05306-RMW                5

Crown Children's Services Act ("Crown Act"). *See* Health & Safety Code § 123000 *et seq.* The intent of the program is to provide, to the extent practicable, for the necessary medical services required by physically handicapped children whose parents are unable to pay for those services. Health & Safety Code §§ 123805 *et seq.*

Local educational agencies, in contrast, are responsible for actively and systematically seeking out and assessing children with exceptional needs to insure that they receive an individualized education program which meets their assessed needs. *See* Cal. Educ. §§ 56300, 56302, 56340 and 56344(b).

In 1984 the Crown Act was amended to specify interagency responsibilities for providing services for handicapped children. Govt. Code §§ 7570 *et seq.* The Crown Act specifically deals with the provision of OT and PT. Cal. Govt. Code § 7575. The State Department of Health Services (or the local agency administering CCS) is "responsible for the provision of 'medically necessary' occupational therapy" for a child by reason of medical diagnosis and when contained in the child's individualized education program. Cal. Govt. Code § 7575(a)(1). The Department is also charged with determining whether a CCS eligible pupil or a pupil with a private medical referral needs "medically necessary OT." Cal. Govt. Code § 7575(b) ("The department shall determine whether a California Children's Services pupil . . . needs medically necessary occupational therapy . . .").

In addition, the Department argues that § 7575(a)(2) makes LEAs responsible for related services as necessary for an IEP when the Department determines the service is not medically necessary. Therefore, the Department submits that the ALJ in an IEP due process hearing resolves disputes between the Parents and the LEAs as to what is "educationally necessary" and does not determine medical necessity. Thus, according to the Department, the ALJ clearly exceeded his powers in awarding additional OT as "medically necessary," because the department is empowered to make the determination of whether a service is "medically necessary" subject only to its regulations providing a means to appeal the Department's determination:

> A CCS applicant or client who disagrees with a decision of the designated CCS agency has the right to appeal that decision. . . . If

ORDER ON MOTION FOR WRIT
Case No. 13-cv-05306-RMW         6

> the client or person legally authorized to decide for the client disagrees with the CCS physician, the client shall be provided with names of three expert physicians from whom the client will choose one, who will evaluate the child at CCS expense. The opinion of the expert physician shall be final.

22 Cal. Code Regs. § 42140; *see also* Cal. Health & Safety Code § 123929(a)(3). Here, Parents did not contest CCS's determination of what OT was medically necessary through the Department's appeals process.

Parents, however, claim that they are not limited to challenging the Department's medical necessity decision with respect to OT by appealing pursuant to the CCS appellate procedure. The Parents submit that the ALJ acted within his power when, over the Department's objection, he awarded Parents additional "medically necessary" OT in the due process hearing on J.C.'s IEP. Dkt. No. 23-1 at 32.

The Parents claim that the dispute between the Parents and the CCS medical personnel who performed the OT assessment concerning the "medical necessity" of those services was properly an issue resolved in the due process hearing. They rely in large part on California Government Code §§ 7572 and 7585 which they contend carry out the joint responsibility of the Superintendent of Public Instruction and the Secretary of Health and Welfare of "[e]nsuring maximum utilization of all state and federal resources available to provide children and youth with disabilities . . . with a free public education, the provision of related services . . . and designated instruction and services . . . ." Cal. Govt. Code § 7570.

Section 7572 sets forth the procedure for assessing the need for OT and related services in order for the child to benefit from a special education. The assessment is reviewed and discussed by the Parents and appropriate members of the IEP team prior to the meeting of individualized education team. Following review and discussion, the recommendation of the person who conducted the assessment (or reviewed the assessment if an independent assessment was done) becomes the recommendation of the individualized education program team. Cal. Govt. Code § 7572(c)(1) and (2). Any disputes between the Parents and the public agencies are then to be resolved in a due process hearing. Cal. Educ. Code §§ 56500 *et seq*.

The court agrees with the Department that the question of what is medically necessary is

ORDER ON MOTION FOR WRIT
Case No. 13-cv-05306-RMW                 7

determined pursuant to the requirements of the Health & Safety Code not as part of an arbitration concerning a student's educational needs. The hearing before the ALJ is not for the purpose of reviewing the "medical necessity" needs of a child under the CCS program. The determination of medical necessity is made by CCS pursuant to the authority of California Health & Safety Code §§ 123825 and 123929(a) ("California Children's Services program services provided pursuant to this article require prior authorization by the department or its designee"). California Health & Safety Code § 123929(a) sets forth the requirements for a child to qualify for CCS services.

A child's educational needs may be the same or different from the services that the Department has determined to be medically necessary pursuant to the CCS Program. If what has been determined as medically necessary is included in the IEP, the Department must provide those services as that is required by Government Code § 7575(a)(1). However, if the OT services are only educationally necessary (found to be educationally necessary by the IEP team) but not medically necessary, § 7575(a)(2) requires that they be provided by the LEAs.

The Parents also argue that Government Code § 7585 supports their claim that the ALJ had jurisdiction to review and alter CCS's determination of medical necessity. That section allows the Parents or any local agency to complain to the Superintendent of Public Instruction or Secretary of Health and Welfare about any department or local agency that fails to provide a related service or designated instruction that they were required to provide pursuant to Government Code § 7575. If the complaint is not resolved satisfactorily to the Parents or local education agency, either may appeal to the Director of Administrative Hearings whose decision is the final administrative determination and binding on the parties. Cal. Govt. Code § 7585(a)-(f).

In the instant case, there is no contention that CCS failed to provide the OT services it determined were medically necessary and were included in J.C.'s IEP that was the subject of the Parents' appeal. Rather, the contention is that CCS's determination of what it was required to provide as medically necessary was erroneous. That is a different question than whether CCS failed to provide the OT that was in J.C.'s IEP and was medically necessary. Nothing in California Government Code § 7585 prevents a parent from filing for a due process hearing to

ORDER ON MOTION FOR WRIT
Case No. 13-cv-05306-RMW                 8

challenge what is educationally required. Cal. Govt. Code § 7586. However, as pointed out above, the determination of what services are medically necessary for a child is a different question than the issue of what services are educationally necessary. *See* Cal. Educ. Code § 56135(b) ("Nothing in this part shall be construed to authorize the superintendent to prescribe health care services"). The purpose of the due process hearing is to ensure that special education and related services in a child's IEP are those "necessary for the child to benefit educationally from his or her instructional program." Cal. Govt. Code § 7573. It is not to reconsider CCS's determination of medical necessity. However, if those services determined by CCS to be medically necessary include services also found to be educationally necessary in a due process hearing, CCS is obligated to provide them. Cal. Govt. Code § 7575(a)(1).

The Parents contend that CCS became a provider of "related services" as that term is used in both the California Education Code and the IDEA and, therefore, their amount is subject to review by the ALJ. *See* Cal. Educ. Code § 56363, 20 U.S.C. §1401(26). This contention overlooks the express language of Government Code § 7575 which says that CCS determines whether OT services are medically necessary. The Interagency Agreement between the Department of Health Services, CMS Branch and California Department of Education, Special Education Division appears to recognize that CCS is only responsible for medically necessary therapy:

> In order to better serve children with disabilities, it is necessary to assure that funds provided from the IDEA are used by the California Department of Education to meet the educational needs of children with disabilities. Pursuant to Section 56205 of the Education Code, LEAs/SELPAs are required to comply with the requirements of IDEA, the Rehabilitation Act of 1998, and the ADA of 1990.
>
> Funds used for providing PT and OT services through the CCS Medical Therapy Program to eligible children will only be expended for medically necessary diagnostic, treatment, and therapy services.

Interagency Agreement, Dkt. No. 27, Ex. 2.

As explained above, the ALJ's authority in the due process hearing is limited to determining whether services are educationally necessary. Once the ALJ determines that services are educationally necessary, his discretion is limited to allocating provision of the services in

ORDER ON MOTION FOR WRIT
Case No. 13-cv-05306-RMW                9

1  accordance with § 7575(a). The ALJ does not have authority to make his own determination of

2  what services are medically necessary, as that authority is limited to the Department.[3] Since the

3  statutory language of Government Code § 7575(a)(1), (2) and (b) is unambiguous, parties should

4  be governed by it. *See Bonnell v. Medical Bd.*, 31 Cal. 4th 1255, 1261 (2003).[4]

### 2. The LEAs' Arguments

The LEAs filed an opposition to the Department's motion for a writ, arguing that the writ request was untimely and inappropriately challenged the LEAs' settlement with Parents. Dkt. No. 37. The LEA's arguments are not persuasive.

First, the petition for writ was timely filed within 90 days of the final decision of the ALJ. Cal. Code Civ. Proc. § 1094.6(b). ("Any such petition [under § 1094.5] shall be filed not later than

---

[3] The Department makes several arguments suggesting that the ALJ's order would have forced it to provide services that were not medically necessary. However, the ALJ made his own determination that the services were medically necessary, and then ordered the Department to provide them. Thus, the Department's position is more properly characterized as the argument that the ALJ cannot make a medically necessary determination, as discussed above.

[4] After the hearing on the current motions, the Parents submitted a copy of the decision in *California Department Health Services et al v. Office of Administrative Hearing and Related Counter-Claims*, CV-58418, filed January 2, 2015 in the Superior Court for the County of Tuolumne ("*Tuolumne*"). That submission was proper under Civil Local Rule 7-3(d) and thus will be considered. In *Tuolumne*, the court affirmed the ALJ's decision that the Department could not unilaterally decrease the amount of medically necessary OT without a due process hearing. The court pointed out that Chapter 26.5 of the California Government Code draws a clear distinction between IDEA related services and medically necessary OT and PT. Section 7575(a)(1)provides that CCS "shall be responsible for the provision of medically necessary occupational therapy and physical therapy . . . by reason of medical diagnosis and when contained in the child's IEP."
   *Tuolumne* held that if CCS believes that a lesser amount of OT and PT services is medically necessary and thus CCS wants to provide less OT or PT, it must follow the applicable procedures set forth in Chapter 26.5 and related Education Code sections and either seek to change the services through the IEP development process or by obtaining an order from the ALJ through a due process hearing pursuant to California Education Code § 56501. As CCS did not do so, the court held that CCS had to restore what it had unilaterally cut.
   Although *Tuolumne* recognized that CCS determines the level of services based on a medical necessity standard, and not a FAPE standard, *Tuolumne* nevertheless found that California has determined that disputes as to the amount of medically necessary as well as educationally necessary OT and PT services that are listed in a child's IEP are to be determined in an IDEA due process hearing.
   *Tuolumne* and the ALJ's reasoning in the instant case overlook two critical factors. One, Government Code § 7575(b) expressly says: "(t)he department shall determine whether a California Children's Services eligible pupil, or a pupil with a private medical referral needs medically necessary occupational or physical therapy." Second, the purpose of a due process hearing is to determine what is necessary to provide a disabled student with a F.A.P.E., not what services are medically necessary.

ORDER ON MOTION FOR WRIT
Case No. 13-cv-05306-RMW                                       10

the 90th day following the date on which the decision becomes final."). The Department could not file an interlocutory writ based on the dismissal of the LEAs, as the writ challenges both the dismissal of the LEAs and the ALJ's jurisdiction over the Department. The Department could not make the second challenge until the ALJ entered a final decision.

Second, the Department is not challenging the settlement with the LEAs, it is only challenging the jurisdiction of the OAH ALJ to proceed without the LEAs. Resolving the Department's writ does not require reopening any settlement with the LEAs.

LEAs' final argument, that the OAH ALJ did have jurisdiction over the Department, is discussed above.

### 3. The LEAs Were Not Required Parties in the Due Process Hearing Following Settlement with Parents

The Department also argues that the due process hearing was held in violation of the law because the ALJ proceeded against the Department without the LEAs. This argument is not persuasive but moot in light of the court's conclusion that the ALJ acted in excess of his authority. The court, nevertheless, briefly addresses it. First, the Parents' original due process complaint did include the LEAs, as contemplated by § 7586(c). *See* A.R. at 3. Once the Parents settled with the LEAs, they were dismissed from the hearing, which was appropriate as they were no longer pursuing any additional therapy from the LEAs. *See also* 20 U.S.C. § 1415(f)(1)(B) (contemplating settlement prior to a due process hearing). Settlement with and dismissal of the LEAs meant that if the Parents did not prevail against the Department on their claim for additional OT sessions, they would be barred by their settlement from pursuing that therapy from the LEAs. As the court determined above, Parents may pursue an educationally necessary determination in a due process hearing, and as the Department is responsible for providing services that are both educationally and medically necessary, the Department is an appropriate party to a due process hearing, but the ALJ cannot adjust the amount of services determined by CCS to be medically necessary.

### C. The ALJ Exceeded His Authority in Ordering Compensatory Therapy and Reimbursements

ORDER ON MOTION FOR WRIT
Case No. 13-cv-05306-RMW                   11

1    In addition to ordering CCS to provide J.C. with weekly OT, the ALJ also ordered several
2 compensatory OT sessions and reimbursement for the costs of the independent assessments. As
3 the court has found that the ALJ exceeded his authority in increasing medically necessary OT, his
4 award of compensation and reimbursement was beyond his authority.

**D. The Department's Motion to Dismiss Parents' Counterclaims is Granted**

Parents' Answer to the Department's complaint includes counterclaims for enforcement of the ALJ's decision and for legal fees. Dkt. No. 12 at 10-11. As the court finds that the ALJ exceeded his authority in ordering additional OT sessions, the motion to dismiss the counterclaims is granted.

**E. The Stay Put Motion is Directed Against the Wrong Party**

Parents' filed a motion to "stay put." Dkt. No. 23. The "stay put" provision of the IDEA guarantees special education students such as J.C. the right to remain in their current educational placement during the course of judicial proceedings. 20 U.S.C. § 1415(j); *see also Johnson v. Special Educ. Hearing Office, State of Cal.*, 287 F.3d 1176, 1178 (9th Cir. 2002) (stating that "section 1415(j) requires the educational agency to maintain a disabled child's educational program until any placement dispute between the agency and the child's parents is resolved."). The "stay put" provisions are very clear that the LEAs are responsible for providing services during the course of judicial proceedings. *See also* 20 U.S.C. § 1412(a)(12)(b)(ii) ("If a public agency other than an educational agency fails to provide [special education services] the local educational agency . . . shall provide or pay for such services to the child. Such local educational agency or State agency is authorized to claim reimbursement for the services from the public agency that failed to provide or pay for such services"). However, here the Parents and LEAs agreed, in exchange for additional benefits described in the settlement agreement, to accept the amount of OT provided in the IEP. Therefore, the LEA's have satisfied their obligation to provide occupational therapy services..

**F. Parents' Request for Attorney's Fees is Denied**

Parents' response to the Department's writ motion includes a request for attorney's fees.

ORDER ON MOTION FOR WRIT
Case No. 13-cv-05306-RMW                    12

1  Dkt. No. 39 at 15.  As the Parents have not prevailed, they are not entitled to fees.

2  **III. ORDER**

3      For the reasons explained above, the Department's petition for a writ of ordinary and

4  administrative mandamus is granted, directing the ALJ to vacate his award and accept the

5  determination of CCS as to the amount of OT services that are medically necessary.  Parents'

6  motion for a stay put order is denied. The Department's motion to dismiss counterclaims is

7  granted.

8      **IT IS SO ORDERED**.

9  Dated: January 21, 2015



RONALD M. WHYTE
United States District Judge